# In the United States Court of Federal Claims

**No. 12-216C**
**(Filed: May 5, 2015)**[1]

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**UUSI, LLC, and OLDNAR CORP.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**GHSP, INC.,**

**Third-Party Defendant,**

**AM GENERAL, LLC.,**

**Third-Party Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Patent Infringement; Laches; Attorney-Client Privilege; "At-issue" Waiver; Equitable Defense.**

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP, 901 New York Avenue, NW, Washington, D.C., 20001, for Plaintiffs.

Conrad J. DeWitte, Jr., Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., 20530, for Defendant. John Fargo, Gary L. Hausken, Joyce R. Branda, Department of Justice, Washington, D.C., 20530, Of Counsel.

William C. Bergmann, Baker & Hostetler, LLP, Washington Square, Suite 1100, 1050 Connecticut Avenue, NW, Washington, D.C., 20036, for Third-Party Defendant, GHSP, Inc. Charles E. Burpee and Kevin G. Dougherty, Warner Norcross & Judd, LLP, 900 Fifth Third Center, 111 Lyon, NW, Grand Rapids, MI 49503, Of Counsel.

[1] The Court issued this opinion under seal on April 24, 2015, and directed the parties to file proposed redactions by May 1, 2015. Plaintiffs have no proposed redactions, and Defendants have not filed any notice concerning proposed redactions.

Robert K. Huffman, Thomas P. McLish, Troy D. Cahill, Akin Gump Strauss Hauer & Feld, LLP, 1333 New Hampshire Avenue, NW, Washington, D.C., 20036, for Third-Party Defendant, AM General, LLC.

---

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTIONS TO COMPEL**

---

**WILLIAMS,** Judge.

This matter comes before the Court on Plaintiffs' motions to compel the production of two attorney-client privileged documents from Third-Party Defendant GHSP, Inc. ("GHSP"). Plaintiffs contend that GHSP waived the privilege by placing confidential attorney-client communications on the same subject matter as these two documents "at issue" in this suit in support of its laches defense. The Court agrees and orders production of the documents.

## Background[2]

### The Engine Electrical Start System and Nartron's Administrative Infringement Claim

In 1997, the United States Army Tank-automotive and Armaments Command ("TACOM") assigned AM General, LLC ("AM General"), the task of soliciting proposals for prototypes of the Engine Electrical Start System (the "EESS"), an engine starter device to be used in the production of High Mobility Multipurpose Wheeled Vehicles ("HMMWV"). Pls.' Am. Compl. ("Am. Compl.") ¶¶ 17, 20. AM General solicited proposals from several vendors, including Nartron Corporation ("Nartron") – the predecessor in interest of Plaintiffs UUSI, LLC, and Oldnar Corporation[3] (collectively, "Plaintiffs") – and KDS Controls ("KDS") – the predecessor in interest of Third-Party Defendant, GHSP, Inc. ("GHSP"). KDS, founded by electrical engineer Stanley Kasiewicz in October 1977, specialized in the design and manufacture of electronic control devices, including the EESS. Kasiewicz Aff. ¶ 1, May 24, 2013. From KDS' formation to the date it was sold on May 14, 2004, Stanley Kasiewicz was the president and sole officer and director of KDS. Kasiewicz Dep. 33:6-18.[4] On December 6, 1999, Nartron learned that AM General, on behalf of TACOM, was purchasing the EESS from KDS for the manufacture of HMMWVs. Id. at 20.

---

[2] This background is derived from Plaintiffs' amended complaint, Plaintiffs' motion to compel, GHSP's motion for summary judgment, and the January 30, 2014 deposition testimony of Stanley Kasiewicz. Citations to "Tr., Jul. 30, 2014" refer to the transcript from oral argument on Defendants' motion for summary judgment. Citations to "Tr., Mar. 18, 2015" refer to the transcript from oral argument on Plaintiffs' motion to compel.

[3] Oldnar was known as "Nartron Corporation" until 2010. Id. at ¶ 1.

[4] Mr. Kasiewicz and his two daughters owned all of the KDS stock before selling all of the shares to GHSP on May 14, 2004. Id. at 32:21-33:5.

On May 26, 1998, Nartron filed an administrative claim challenging the Department of the Army's procurement of KDS' EESS and alleging that the United States Government and its suppliers infringed U.S. Patent No. 5,570,666 ("the '666 patent"). Def.'s Mot. for Summ. J. ("Mot. for Summ. J."), Ex. 4. On February 28, 2000, TACOM denied Nartron's administrative claim, and stated that at a minimum, the U.S. Government had "a royalty free license to practice the invention or have it practiced on its behalf" and that the '666 patent "may well be invalid as a result of an 'on-sale' bar." Id.

On May 10, 2001, Nartron sent a letter to TACOM contracting officer Marie Gapinski, challenging the procurement of KDS' EESS and advising that Nartron's patents "covered significant development effort and large expenditures to develop EESS systems for the HMMWV." Am. Compl. ¶ 23. On June 11, 2001, TACOM's counsel from the Chief Intellectual Property Law Division sent Nartron a letter, advising Nartron of the procedure for filing an administrative claim. Mot. for Summ. J., Ex. 8.

In 2007, TACOM and AM General began replacing the EESS with the Smart Start System ("S3"), produced by KDS with all of the features of the EESS in addition to a starter lockout and a serial bus networking system. Am. Compl. ¶¶ 27, 32, 35.

**Correspondence Between Nartron Corporation and KDS' Patent Counsel, Paul Ethington, Regarding KDS' Alleged Infringement**

In 2000, KDS retained the services of the law firm Reising Ethington and attorney Paul Ethington to handle KDS' intellectual property matters.[5] Def.'s Resp. to Pls.' Mot. to Compel 1. According to Mr. Kasiewicz, KDS deferred to Mr. Ethington's expertise in assessing any patent infringement claims brought against KDS because Mr. Ethington was KDS' designated patent counsel. Kasiewicz Dep. 57:7-58:3, Jan. 30, 2014.

On December 14, 2000, Mr. Kasiewicz received a letter from Nartron's chief executive officer, Norman Rautiola, alleging that KDS' EESS infringed on various Nartron patents, including U.S. Patent Nos. 6,148,258 ("the '258 patent"), 6,009,369 ("the '369 patent"), and 5,729,456 ("the '456 patent"), and stating that Nartron "may have an interest in licensing your company for such product." Mot. for Summ. J., Ex. 1A. Mr. Kasiewicz forwarded this letter to KDS' patent counsel, Mr. Ethington, for his assessment of Nartron's claims. Kasiewicz Dep. 57:7-58:3, 142:19-143:1, 146:7-13.

On January 26, 2001, Mr. Ethington responded on behalf of KDS to Nartron's December 14, 2000 letter, requesting that Nartron identify the "features or aspects of KDS products that [Nartron] consider[s] to be covered by [its] patents" and that it also "identify which of the patents and patent claims [Nartron] consider[s] to be applicable." Mot. for Summ. J., Ex. 1B.

On August 17, 2003, Paul Ethington died. Pls.' Opp. to Defs.' Mot. for Summ. J., Ex.

[5] Reising Ethington has not represented KDS since 2004, and has never represented KDS' successor, GHSP. Hoffman Aff. ¶ 3, Aug. 8, 2014.

36.

**KDS' Counsel's Memorandum and KDS' Engineer's Notes**

On January 29, 2001, Mr. Ethington sent Mr. Kasiewicz a memorandum, which is the subject of the instant motion to compel. Mr. Ethington's memorandum is entitled "NARTRON PATENTS 5,570,666; 5,729,456; 6,009,369; and 6,148,258," and was prepared in response to Mr. Kasiewicz's request for a brief statement on each of the main claims of Nartron's patents in issue. Pls.' Mot. to Compel ("Mot. to Compel"), Ex. C. The memorandum summarizes the elements of the claims of the '258 patent, the '369 patent, the '456 patent, and the '666 patent but does not contain any infringement analysis.

In the introduction to the memorandum, Mr. Ethington states:

> [t]his memorandum will give a summary statement of what each patent stands for, i.e. the invention covered by the patent. The summary statement is developed by paraphrasing each independent claim in each patent. The first three listed patents were cited in the Nartron letter of December 14, 2000. The fourth patent [the '666 patent] is cited in the cover sheet of the 5,729,456 [patent].

Id.

In response to Mr. Ethington's January 26, 2001 request that Nartron identify how KDS infringed its patents, Nartron, in a letter of April 10, 2001, stated that KDS was at a minimum infringing on claims 1 and 48 of the '258 patent and directed KDS to "immediately cease and desist all such activities." Mot. for Summ. J., Ex. 1C.

On May 24, 2001, Larry Lieb, a KDS engineer significantly involved in the design and building of the EESS for TACOM, authored handwritten notes (the "Lieb Notes") analyzing each claim of the '258 patent, the '369 patent, the '456 patent, and the '666 patent. Mr. Lieb testified:

> I am the author of the notes dated May 24, 2001 attached hereto . . . and numbered GHSP 141138 to GHSP 141140. I advised Kevin Dougherty [GHSP's lead counsel] on July 25, 2014, that I was the author of these notes. The notes were made at the request of Mr. Kasiewicz, Mr. Telmet [manager of KDS's engineering department], and/or Mr. Ethington for the purpose of discussing patent infringement claims with Mr. Ethington in a meeting, which my notes indicate was scheduled for the next Wednesday, May 30, 2001 at 9:30 a.m.

Lieb Aff. ¶ 4, Sept. 24, 2014. These notes are also at issue in Plaintiffs' motion to compel.

In his handwritten notes, Mr. Lieb listed the claims of each patent and the elements thereunder, including his impressions next to each element. Mr. Lieb wrote "yes" next to every

element of two claims – claims 1 and 17 concerning the composition and control of the glow plug controller – of the '369 patent. Mot. to Compel, Ex. E; Pls.' Mot. to Compel Infringement Analysis, Ex. A. According to Plaintiffs, because the purpose of the notes was to facilitate KDS' assessment of the merits of Nartron's patent infringement claims by providing relevant information to KDS' patent counsel, the "yes" next to every element of claims 1 and 17 suggests that Mr. Lieb believed that the EESS meets all of these elements and therefore infringes on the '369 patent. Mr. Lieb was not deposed, and his affidavit is his only testimony in the record concerning his notes. In Mr. Lieb's affidavit, which was submitted by GHSP, he does not explain what the "yeses" mean, but he does say that KDS management directed him to draft the notes in preparation for a meeting with counsel Ethington on Nartron's infringement claims.

**KDS' Contact With TACOM About Nartron's Infringement Claims**

Sometime between April 10, 2001, and June 6, 2001, Mr. Kasiewicz had one telephone conversation with Marie Gapinski, a nonlawyer contracting officer at TACOM, about Nartron's infringement claims. Kasiewicz Dep. 186:5-8, 191:11-15. According to Mr. Kasciewicz, during this conversation, Ms. Gapinski said that she was aware of Nartron's claims, that TACOM believed there was no basis for the infringement claims, and that any correspondence from Nartron concerning its patent infringement claims should be forwarded to her. Kasiewicz Dep. 153:21-154:1-16. In his deposition, which occurred well over 13 years after this conversation, Mr. Kasiewicz recounted his conversation with Ms. Gapinski as follows:

> So at that point we then contacted TACOM and spoke to Marie Gapinski. I explained to her what was going on, and she explained to me that they were aware of the Nartron claims, and it was their belief that this had no merit and that Nartron did not have a valid claim for two reasons. One is that the specifications that evolved, that was the genesis for these control boxes to evolve, were written by TACOM, and information with the development of the EESS was a part of the TACOM involvement. The second thing was that they had paid [Nartron and KDS] for the development of this product, and in doing so, that they had no obligation for any patents that might arise from this. She then further told me that I should just have any issues that relate to this be directed to her and they would take care of it, which we did.

Id. at 153:25-154:16.

After Mr. Kasiewicz's telephone conversation with Ms. Gapinski, KDS's counsel, Paul Ethington, sent Nartron a letter on June 6, 2001, instructing Nartron to forward all correspondence regarding patent infringement allegations concerning the EESS to Ms. Gapinski. Mot. for Summ. J., Ex. 1D; Kasiewicz Dep. 191:11-15. This June 6, 2001 letter was the final communication between KDS and Nartron concerning Nartron's infringement claims. Nartron neither sent KDS additional correspondence regarding its infringement claims nor initiated any patent infringement litigation against KDS. See Kasiewicz Aff. ¶ 10.

**GHSP Acquires KDS**

On May 14, 2004, GHSP acquired all shares of KDS stock for $7 million in cash, a $2 million promissory note, and up to $4 million in contingencies dependent on KDS' financial results during any given "Earn Out Period."[6] Mot. for Summ. J., Ex. 9-1. Under Sections 3.6, 3.10, and 3.18 of the Stock Purchase Agreement that governed this acquisition, KDS was required to disclose to GHSP existing or threatened liabilities, claims, or litigation, including any threats of infringement upon intellectual property rights of third parties by the closing date, May 31, 2004. Mot. for Summ. J. 16. KDS did not disclose any of the patent infringement claims Nartron raised in its letters to KDS in 2000 and 2001.

Under Section 7.7 of the Stock Purchase Agreement, no claim for indemnification could be asserted "unless written notice stating in reasonable detail the nature of the claim [was] given to the party against whom such claim [was] asserted within three (3) years after the Closing Date." Mot. for Summ. J., Ex. 9-1 (emphasis added). GHSP had until May 2007, to assert claims for indemnification against KDS. Mot. for Summ. J. 17.

Under Sections 3.9, 5.3, and 5.9 of the Stock Purchase Agreement, and according to Mr. Kasiewicz's deposition testimony, GHSP had access to all of KDS' records during the pre-purchase inspection and after the closing date, including the four letters exchanged between Nartron and Paul Ethington concerning Nartron's patent infringement allegations. Mot. for Summ. J., Ex. 9-1; Kasiewicz Dep. 31:8-14, 144:4-7, 182:14-20, 187:11-15, 192:12-17, 222:25-223:23, 263:10-23. According to Mr. Kasiewicz, these four letters – dated December 14, 2000, January 26, 2001, April 10, 2001, and June 6, 2001 – were likely stored in KDS' file cabinet and maintained by KDS' bookkeeper, Rita Ayar. Kasiewicz Dep. 143:18-144:3, 181:21-23, 187:8-10, 192:8-11. Also according to Mr. Kasiewicz, KDS granted GHSP access to these records for its review prior to the acquisition and transferred these records to GHSP after the acquisition. Id. at 144:4-7, 181:24-182:16, 187:11-15, 192:12-17. After the May 14, 2004 acquisition, KDS continued to operate as its own entity under the ownership and control of GHSP until January 1, 2009, when it officially merged into GHSP.

**Nartron's Assignment of Patents to UUSI**

On or around December 17, 2009, Nartron assigned U.S. Patent Nos. 5,287,831 ("the '831 patent"), 5,327,870 ("the '870 patent"), 5,413,072 ("the '072 patent"), and 5,507,255 ("the '255 patent), as well as the '456 patent, the '369 patent, and the '258 patent to UUSI. Am. Compl. ¶ 3. This assignment "included the right to assert infringement actions and to collect damages or seek other remedies regardless of when the infringement occurred, including past infringement." Id.

**Plaintiffs' Patent Infringement Litigation**

On April 3, 2012, Plaintiffs filed the instant action alleging that Defendant infringed on

[6] The "Earn Out Periods" included the period from May 15, 2004, through December 31, 2004, each of fiscal years 2005, 2006, and 2007, and the period from January 1, 2008, through May 31, 2008. Mot. for Summ. J., Ex. 9-1.

the '831, '870, '456, '369, and '258 patents based on Defendant's use or manufacture of the EESS and the S3. On March 17, 2014, Plaintiffs filed an amended complaint alleging that, in addition to infringing these patents, Defendant also infringed on the '072 patent and the '025 patent. Neither the Ethington Memorandum nor the Lieb Notes addresses the '072 patent or the '255 patent. Specifically, Plaintiffs allege that the S3 infringes all of these patents and that the EESS infringes all of these patents except for the '831 patent. Am. Compl. at Counts I-IV.

In January 2013, Plaintiffs sent GHSP a request for the production of documents. On April 12, 2013, at the request of the parties, this Court entered a Protective Order that provided in part:

> Any discovery documents produced in this litigation may later be designated as "Attorney-Client Privileged," "Attorney Work Product" . . . . In such an instance, no waiver of privilege . . . shall be deemed to have occurred. Upon such designation, the receiving attorney shall promptly collect all copies of such documents and return them to the producing party, or sequester such documents, summaries of such documents, and notes relating to such documents for further review of the [C]ourt.

Order of April 12, 2013. On July 22, 2013, GHSP responded and produced 11,831 documents labeled GHSP000001 to GHSP152935. Dougherty Aff. ¶¶ 3, 12, Aug. 11, 2014. This document production included the Lieb Notes, marked GHSP 141138 to GHSP 141140, as well as two copies of the Ethington Memorandum, marked GHSP 141141 to GHSP 141154. Mot. to Compel, Ex. E; Pls.' Mot. to Compel Infringement Analysis 2; Lieb Aff. ¶ 4. When lead counsel for GHSP, Kevin Dougherty, reviewed documents KDS provided GHSP, Mr. Dougherty located and withheld a copy of the Ethington Memorandum on the basis of the attorney-client privilege. Dougherty Aff. ¶ 11.

**GHSP's Motion for Summary Judgment on Laches and Estoppel Grounds**

GHSP filed a motion for summary judgment on laches and estoppel grounds, arguing that Plaintiffs' infringement claims should be dismissed. Specifically, GHSP argued that Plaintiffs unreasonably delayed filing suit until 2012, despite having actual and constructive knowledge of their infringement claims as early as December 14, 2000, when Nartron sent KDS its initial letter asserting patent infringement claims. According to GHSP, because Plaintiffs unreasonably "sat on their rights," GHSP suffered economic and evidentiary prejudice – it was exposed to liability, it could no longer seek timely indemnification from KDS, and it lost the input of former KDS engineers involved in the design and manufacture of the EESS, in addition to the legal advice of KDS' patent counsel, Paul Ethington. Motion for Summ. J. 16-18.

GHSP relied upon the affidavit of Mr. Kasiewicz – in particular his determination that Nartron's infringement claims had no merit – to assert prejudice due to Plaintiffs' delay in filing their complaint. In this affidavit, Mr. Kasiewicz testified:

> As a result of receiving Nartron's December 14, 2000, correspondence, I had discussions with my patent counsel, Paul J. Ethington. I also had discussions with Marie Gapinski, who was

> one of KDS's contacts at TACOM. As a result of these discussions, I concluded that Nartron's patent infringement claims had no merit.

Kasiewicz Aff. ¶ 5. Mr. Kasiewicz further testified that KDS did not disclose Nartron's infringement claims to GHSP in the Stock Purchase Agreement because of "these discussions" and because he had heard nothing more from Nartron concerning its infringement claims:

> After June 6, 2001, I never received any notice or information regarding Nartron pursuing any patent infringement claims against KDS . . . . I did not disclose to GHSP anything relating to Nartron's patent infringement allegations. Due to the passage of time, and having heard nothing about any alleged infringement for more than three years, I assumed that Nartron did not intend to pursue its claim and I simply forgot about it.

Kasiewicz Aff. ¶¶ 5, 10, 12.

**Production of the Privileged Ethington Memorandum and Lieb Notes**

On January 27, 2014, Plaintiffs issued a subpoena directing Reising Ethington to produce documents that included opinions relating to the patents in issue and any documents concerning the Ethington Memorandum. Hoffman Aff., Ex. A. On February 3, 2014, counsel for GHSP advised Reising Ethington that GHSP, as the successor in interest to KDS, had not waived the attorney-client privilege between KDS and Reising Ethington, and later objected to the production of any privileged documents. Nonetheless, on February 26, 2014, Reising Ethington produced 17 pages to Plaintiffs in response to the subpoena, including the Ethington Memorandum. Id. at ¶ 8.

On May 6, 2014, in their opposition to GHSP's motion for summary judgment, Plaintiffs included the Lieb Notes as evidence of willful infringement, arguing that the notes placed KDS and GHSP on notice that their product infringed Nartron's patents. Pls.' Opp. to Mot. for Summ. J. 25. In response to Plaintiffs' willful infringement claim, GHSP argued that KDS had a good-faith belief that the EESS did not infringe Nartron's patents.

Larry Lieb, the author of the Lieb Notes, Dougherty Aff. ¶ 16, confirmed the following:

- The name Paul, which appears at the top right corner of the first page of the Lieb Notes, refers to KDS' patent counsel, Paul Ethington. Mot. to Compel 5-6.

- KDS management directed Larry Lieb to prepare the Lieb Notes for the purpose of discussing Nartron's infringement allegations against KDS with Paul Ethington. Lieb Aff. ¶¶ 4-5.

- Larry Lieb used the Lieb Notes in a meeting with Paul Ethington held on May 30, 2001, shortly after the notes were written. Id.

On July 30, 2014, this Court denied GHSP's motion for summary judgment because the record was not sufficiently developed to warrant a judgment on either laches or equitable estoppel, but did not strike the laches or estoppel defenses, and permitted the parties to amplify the record on these defenses. Tr. 135:9-22, Jul. 30, 2014.

**Plaintiffs' Challenge to GHSP's Assertions of Privilege with Respect to the Ethington Memorandum and the Lieb Notes**

On July 17, 2014, Plaintiffs filed a motion to compel, challenging GHSP's assertion of the privilege with respect to the Ethington Memorandum, and arguing that the Lieb Notes were linked to the Ethington Memorandum because the notes alluded to a meeting with Paul Ethington and contained an analysis of the same four patents-in-suit summarized in the Ethington Memorandum. Mot. to Compel 5-6. On August 11, 2014, GHSP filed its response to Plaintiffs' motion to compel and argued that there was no waiver of privileged material pursuant to the claw back provision of the Court's Protective Order and Federal Rule of Evidence 502(b).

On September 10, 2014, Plaintiffs filed a motion challenging GHSP's assertion of privilege regarding the Lieb Notes, arguing that the Lieb Notes were not privileged and that, even if they were, any privilege had been waived because GHSP selectively relied on certain of KDS' communications with Paul Ethington to assert its laches defense in its motion for summary judgment. Pls.' Mot. to Compel Infringement Analysis 8.

On February 18, 2015, after obtaining new counsel, Plaintiffs filed a supplemental brief, arguing that because GHSP disclosed and relied on communications with counsel to assert its laches and estoppel defense in its motion for summary judgment, GHSP waived any privilege by placing these communications "at issue." Pls.' Supp. Brief 6. Plaintiffs contended:

> GHSP cited the affidavit by Mr. Kasiewicz during summary judgment as evidence of prejudice suffered, including with respect to the Stock Purchase Agreement and GHSP's remedies under that Agreement. Through this summary judgment briefing and supporting affidavit, GHSP disclosed the existence of the discussions with Attorney Ethington and what GHSP believed at the time of briefing was the substance of the discussions. When KDS's former president Mr. Kasiewicz stated that "[a]s a result of those discussions [with counsel], I concluded that Nartron's patent infringement claims had no merit," he represented that Attorney Ethington counseled him that the patents did not infringe . . . .

Id. at 2-5 (alterations in original). On March 3, 2015, GHSP responded that there was no subject-matter waiver, that GHSP was not wielding privileged documents as both a sword and a shield, and that the privileged documents were irrelevant to the issues raised in its motion for summary judgment because GHSP did not rely on the substantive contents to advance its laches defense.

On March 18, 2015, this Court held a hearing on Plaintiffs' motion to compel challenging

GHSP's assertions of privilege with respect to the Ethington Memorandum and the Lieb Notes.

**Discussion**

**GHSP Waived the Attorney-Client Privilege By Placing the Ethington Memorandum and the Lieb Notes "At Issue" In this Litigation**

Plaintiffs claim that GHSP impliedly waived the attorney-client privilege with respect to the Ethington Memorandum and the Lieb Notes when it placed these privileged documents "at issue" by invoking its laches defense. The Court agrees.

The Federal Circuit has recognized the implicit waiver of the attorney-client privilege when privileged information is "at issue." This concept was first articulated in Hearn v. Rhay, 68 F.R.D. 574, 581 (E. D. Wash. 1975) and later adopted by the Federal Circuit in Zenith Radio Corporation v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985). Under Hearn, an implied waiver of the attorney-client privilege occurs when:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Hearn, 68 F.R.D. at 581. An "at-issue" waiver can be invoked "when a party makes the content of his attorney's advice relevant to some claim or defense in the case. Even if the party does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by implication." Wi-LAN, Inc. v. LG Elecs., Inc., 684 F.3d 1364, 1370 (Fed. Cir. 2012).

The "at-issue" waiver is grounded in principles of fairness; the waiver applies when a party relies on advice of counsel to assert a claim or defense that in fairness requires the examination of privileged material. See In re EchoStar Commc'n Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("[S]elective waiver . . . may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice."); Cormack v. United States, 118 Fed. Cl. 39, 43 (2014) ("In particular, courts are concerned with basic notions of fairness, aiming to prevent a party from disclosing communications supporting its position while simultaneously withholding communications that do not.").

The "at-issue" waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by the examination of the privileged communications. See Eden Isle Marina, Inc. v. United States, 89 Fed. Cl. 480, 502 (2009) ("A client may also waive the privilege by implication if the communication is necessary to establish its claim or defense.") (citing Blue Lake Forest Prods., Inc. v. United States, 75 Fed. Cl. 779, 783 (2007)).

Plaintiffs' "at-issue" waiver claim in this case relates exclusively to GHSP's laches defense – GHSP claims that Plaintiffs' delay in filing suit prejudiced it because the company it

acquired, KDS, never advised it of potential patent infringement claims that Nartron had raised as early as 2000, and GHSP's right to seek indemnification from KDS for alleged patent infringement had expired by the time this suit was filed.

In this Court's view, based upon the existing record, attorney-client privileged information shared between KDS and its counsel, Mr. Ethington, was at least part of the reason KDS did not believe it had any obligation to disclose Nartron's potential patent infringement claims to GHSP in the acquisition. Specifically, KDS' founder and president, Mr. Kasiewicz, testified that as a result of discussions with his counsel, Mr. Ethington, and a nonattorney TACOM contact, he "concluded that Nartron's patent infringement claims had no merit." Kasiewicz Aff. ¶ 5. Because Nartron did not notify KDS that it was pursuing patent infringement claims for over three years – from June 6, 2001, until the acquisition on May 14, 2004 – Mr. Kasiewicz "assumed Nartron did not intend to pursue its claim" and "simply forgot about it." Id. at ¶¶ 10, 12. According to GHSP, by the time Plaintiffs filed this action in 2012, GHSP was contractually time-barred from seeking indemnification from KDS under the terms of the Stock Purchase Agreement.

A crucial underpinning of GHSP's laches defense is that Mr. Kasiewicz's discussions with counsel informed KDS' conclusion that Nartron's patent infringement claims had no merit, thus causing KDS' management to believe that Nartron was not pursuing infringement claims and Mr. Kasiewicz to "simply [forget] about it." Kasiewicz Aff. ¶ 12. GHSP proffered Mr. Kasiewicz's affidavit on that point and placed that privileged information squarely "at issue." However, during the course of discovery, two other documents surfaced which appear to contradict Mr. Kasiewicz's testimony that Mr. Ethington advised KDS that Nartron's patent infringement claims were meritless. The Ethington Memorandum summarizing the claims of Nartron's patents-in-suit coupled with the notes of KDS engineer, Larry Lieb, prepared at KDS' management's direction for his meeting with Mr. Ethington about Nartron's claims, facially suggest that Mr. Lieb and Mr. Ethington believed that there was infringement. In the notes, Mr. Lieb wrote "yes" next to every element of claims 1 and 17 of the '369 patent, suggesting that after comparing the EESS with Nartron's patents-in-suit, he found that the EESS meets all the elements of claims 1 and 17 of the '369 patent and therefore infringes on Nartron's '369 patent.[7]

These two privileged documents cover the same subject matter as the attorney-client privileged discussions between Mr. Kasiewicz and Mr. Ethington referenced in paragraph five of the Kasiewicz affidavit. Mr. Kasiewicz's rendition of his discussions with Mr. Ethington reflects that Mr. Ethington opined that there was no infringement, while the Ethington Memorandum coupled with the Lieb Notes suggest the opposite – that there was infringement. It would be unfair for GHSP to waive the attorney-client privilege with respect to the Ethington-Kasiewicz discussions on Nartron's claims of patent infringement but then invoke the privilege to shield documents authored by counsel and a KDS engineer that also reflect their discussions on Nartron's infringement claims.

Laches is an equitable defense. Integrated Tech. Corp. v. Rudolph Tech., Inc., 734 F.3d 1352, 1361 (Fed. Cir. 2013). A party seeking an equitable remedy from the Court is subject to

[7] This Court recognizes that Mr. Lieb was not deposed, and he did not directly address in his affidavit what the "yeses" in his notes meant or whose input prompted them. Thus the Court makes no finding as to what Mr. Lieb's notes actually mean, only what they suggest.

equitable principles epitomized by the maxim, "he who seeks equity must do equity," – it must act fairly in pursuing equitable relief. See, e.g., Dubinsky v. United States, 44 Fed. Cl. 509, 512-13 (1999) ("[A]n injunction is an equitable remedy, and requires the court to consider whether plaintiff has 'done equity.'"). Here, the application of the "at-issue" waiver is particularly appropriate so that both Plaintiffs and GHSP can probe the attorney-client discussions and advice that underlie GHSP's laches defense. Apparently, KDS never told GHSP about Nartron's potential infringement claims in the acquisition, because it believed Nartron's patent infringement claims were meritless based at least in part upon counsel Ethington's advice. In GHSP's view, KDS' failure to provide notice of Nartron's potential infringement claims in the acquisition and Plaintiffs' delay in filing suit, caused GHSP to forfeit its rights under the Stock Purchase Agreement for indemnification. Stated differently, the crux of GHSP's economic prejudice claim underlying its laches defense is its inability to seek indemnification from KDS. That inability stems from KDS' failure to disclose Nartron's infringement claims based on KDS' alleged belief, informed by discussions with counsel, that Nartron's infringement claim had no merit. In order for there to be a fair and level playing field for adjudicating GHSP's laches defense, both GHSP and Plaintiffs need to have access to materials reflecting these privileged communications.

GHSP attempts to retreat from KDS' apparent reliance on Mr. Kasiewicz's discussions with his counsel, Mr. Ethington, to suggest that it was not the advice of counsel, but a conversation with a TACOM contracting officer, that persuaded Mr. Kasiewicz that Nartron's infringement claims were meritless. GHSP challenged Plaintiffs' interpretation of paragraph five of the Kasiewicz affidavit, arguing that Mr. Kasiewicz only referenced "discussions" with TACOM contracting officer Ms. Gapinski, and not "discussions" with patent counsel, in his affidavit. Tr. 29:8-22, Mar. 18, 2015. Paragraph five states:

> As a result of receiving Nartron's December 14, 2000, correspondence, I had discussions with my patent counsel, Paul J. Ethington. I also had discussions with Marie Gapinski, who was one of KDS's contacts at TACOM. As a result of these discussions, I concluded that Nartron's patent infringement claims had no merit.

Kasiewicz Aff. ¶ 5. Specifically, GHSP argues that the words "these discussions" in the last sentence of paragraph five only refer to Mr. Kasiewicz's discussions with nonattorney Ms. Gapinski of TACOM. Tr. 28:11-14, 32:6-25, Mar. 18, 2015. A careful reading of the language in paragraph five of the Kasiewicz affidavit refutes GHSP's interpretation. In this paragraph, Mr. Kasiewicz refers to "these discussions" – the discussions that form the basis of his conclusion on the merits of Nartron's infringement claims – in the plural. Kasiewicz Aff. ¶ 5. In his deposition testimony, Mr. Kasiewicz asserted that he only spoke once with Ms. Gapinski concerning Nartron's patent infringement claims, so his use of the plural to refer to the "discussions" that informed his conclusion indicates that he is not only referencing the single conversation with Ms. Gapinski, but also the conversations he had with counsel Ethington to conclude that Nartron's patent infringement claims were meritless. Kasiewicz Dep. 161:11-13, 164:15-17,165:10-13.

To support its interpretation of paragraph five, GHSP refers to select excerpts of Mr. Kasiewicz's deposition testimony:

> [MR. FRANKLIN]: In response to this letter, [paragraph five of the Kasiewicz affidavit] says you had discussions, and this is the December 14th, 2000 letter from Norman Rautiola. Did you do anything else in response to Nartron's letter of December 14th, 2000 other than having discussions?
>
> A: Well, first of all, I sent this to my patent attorney to review. He then sent another letter, too, or sent a letter back to Nartron asking for specifics, how does it infringe? Their response was very vague. So at that point we then contacted TACOM and spoke to Marie Gapinski. I explained to her what was going on, and she explained to me that they were aware of the Nartron claims, and it was their belief that this had no merit and that Nartron did not have a valid claim for two reasons . . . .
>
> Q: Did you do anything else other than have discussions in response to this December 14, 2000 letter from Mr. Rautiola?
>
> A: When you say did I do anything else, meaning what?
>
> Q: Did you do anything other than talk with people?
>
> A: That's right, I just spoke to people.
>
> MR. LEVINE [Counsel for Mr. Kasiewicz]: Well, let me clarify the record, because I believe you answered before that you did turn the letter over to your patent attorney.
>
> A: Yes, I gave it to the attorney. The attorney looked at it, said --
>
> MR. DOUGHERTY: I am going to object and instruct the witness not to answer as to any attorney-client communications.
>
> MR. LEVINE: I was just making a point that you gave it to your attorney.
>
> MR. FRANKLIN: Well, did you tell Marie Gapinski what your attorney said?
>
> A: My attorney didn't say anything, --
>
> Q: Well, that takes care of that objection.
>
> A: -- other than there wasn't enough information.

> MR. DOUGHERTY: I am going to object again and instruct the witness not to answer as to communications that he had with Mr. Ethington.
>
> ***
>
> Q: Turning back to Exhibit 18, your affidavit in paragraph five, in this one conversation that you had with Ms. Gapinski, what did she say with respect to the Nartron letter of December 14th, 2000?
>
> A: When I spoke to her, Ms. Gapinski told me that TACOM was aware of the Nartron issue . . . . She then went on to explain to me that it was their feeling that Nartron had no basis for this for two reasons . . . .
>
> Q: Did she say anything else?
>
> A: That's all I remember. Well, she did say, the most important part, not to worry about it, that they would take care of it, and just have all communications regarding this matter directed to her.

Kasiewicz Dep. 153:16-155:19, 163:17-164:14. According to GHSP, these excerpts show that Ms. Gapinski's advice was the sole basis for Mr. Kasiewicz's conclusion that Nartron's infringement claims were meritless. However, such a conclusion is not reasonably inferred from the quoted colloquy given that GHSP's counsel invoked the privilege to instruct KDS' founder, Mr. Kasiewicz, not to testify about what his counsel said about Nartron's patent infringement claims, and Mr. Kasiewicz could not address counsel's discussions or advice.

Moreover, Mr. Kasiewicz's deposition testimony also suggests that because Mr. Ethington was KDS' designated patent counsel, KDS typically deferred to his advice on the merits of any and all infringement claims, including Nartron's claims; Mr. Kasiewicz asked Mr. Ethington for his opinion on the Nartron infringement claims; and Mr. Kasiewicz had ongoing communications with Mr. Ethington about Nartron's infringement claims. Mr. Kasiewicz testified:

> [MR. FRANKLIN]: And who at KDS Controls had authority to make decisions as to whether or not KDS Controls was running the risk of infringing other's intellectual property?
>
> A: That decision would be the patent attorney [Paul Ethington]. We would rely on his recommendations, and his counsel would determine whether we would be in jeopardy or not.
>
> Q: So from your position as president of KDS Controls, in your decision-making, you were thinking there was no one at KDS Controls that was qualified to make decisions on intellectual property issues; is that correct?

A: Absolutely. None of us were attorneys.

Q: So as far as intellectual property issues at KDS Controls, if issues arose, you referred them to your intellectual property lawyer?

A: That is correct.

Q: And when decisions were to be made on intellectual property issues at KDS Controls, you deferred to your intellectual property lawyer, because no one at KDS Controls had the expertise to make those decisions?

A: That is correct.

***

Q: During the time period that you were at KDS Controls, did KDS Controls use any intellectual property attorneys other than Paul Ethington?

A: No.

***

Q: What did KDS do with respect to due diligence concerning threats of patent infringement?

A: We had threats reviewed by our legal consultant [Paul Ethington].

***

Q: When you received the December 14th, 2000 letter, did you do anything else with it other than send it to your patent attorney, Mr. Ethington?

A: No, I sent it to him for his opinion.

***

Q: Did this letter from Mr. Rautiola [chief executive officer of Nartron] of December 14th, 2000 generate any conversations?

A: Only between myself and my patent attorney.

***

Q: And whether or not the EESS infringed any of the Nartron patents, and I am talking about the KDS EESS, you are leaving that to your patent attorney?

A: Yes.

Kasiewicz Dep. 57:7-58:3, 61:6-9, 94:25-95:4, 142:23-143:1, 146:7-9, 151:10-13. This excerpt from Mr. Kasiewicz's deposition suggests that any conclusion KDS made about infringement would be based upon the advice of its patent counsel, Mr. Ethington.

While the record at this juncture is not a model of clarity,[8] in this Court's view, it is most reasonably interpreted to mean that Mr. Kasiewicz relied on the advice of both Ms. Gapinski and Paul Ethington to conclude that Nartron's infringement claims were meritless. Because GHSP affirmatively injected attorney-client privileged communications between KDS and its patent counsel on the merits of Nartron's infringement claims in pressing its laches defense, Plaintiffs deserve access to additional privileged communications on this same subject to provide them a fair opportunity to rebut GHSP's laches defense.

The attorney-client privilege generally ceases to exist upon waiver, so GHSP's assertion that the claw back provision of the Court's Protective Order preserves the privilege will not resurrect the privilege as it applies to the Ethington Memorandum and the Lieb Notes. See Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1416-17 (Fed. Cir. 1997) (stating that once the attorney-client privilege is waived, it ceases to exist for all purposes and can no longer be invoked to prevent access to the communications in question) (citing Epstein and Martin, The Attorney-Client Privilege and the Work-Product Doctrine 76 (5th ed. 2007 and 2012 Supp.)). For this reason, the Court does not analyze whether GHSP's disclosures were inadvertent and subject to claw back under the Protective Order.

## Conclusion

GHSP placed attorney-client communications between KDS and its counsel Paul Ethington regarding the merits vel non of Nartron's patent infringement claims "at issue" in this litigation by describing them in the Kasiewicz affidavit. As such, GHSP waived the privilege for two other privileged documents on this subject, the Ethington Memorandum and the Lieb Notes. Plaintiffs' Motions to Compel Challenging GHSP's Assertions of Privilege are **GRANTED.**[9]

The Court will convene a telephone status call on **May 6, 2015, at 4:00 p.m. EDT** to schedule further proceedings.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

[8] At the hearing on Plaintiffs' motion to compel, the Court questioned whether it should conduct an evidentiary hearing on the question of "at-issue" waiver to enable the Court to hear and observe Mr. Kasiewicz's testimony concerning his assertions in paragraph five of his affidavit. The parties requested that the Court rule on Plaintiffs' motion to compel based on the existing record. Tr. 41:5-12, Mar. 18, 2015.

[9] This opinion addresses Plaintiffs' motions filed under docket entry numbers 133 and 142.